YARRUT, Judge.
Defendants appeal from a judgment of the lower court awarding Plaintiff $5,342.-00, being 10% of the premium of $53,420.00' on a performance bond, countersigned by it, for a construction contract, which was executed by the Alabama General Insurance Company and procured by Defendant insurance agency as soliciting agent. The bonded contractor was R. L. Bernardo & Son, and the city of Panama City, Florida, owner, for the erection of a waterfront development project in that city.
Plaintiff contends it was employed by the Defendants to countersign the performance bond pursuant to a Florida state statute requiring that any bond issued to protect such construction in Florida must be countersigned by a duly authorized resident agent of Florida. Florida Stat. Tit. 35, Ch. 624, § 624.0224, F.S.A. Defendants contend that they owe nothing to Plaintiff; that they did not employ or request it to countersign the bond and that, if Plaintiff did do so, it was on behalf of the insurance company, and not Defendants.
It is not necessary to detail the events that led to the countersigning by Plaintiff, except to say that though the Defendants denied any knowledge of the Plaintiff agency, Mr. Montaldo did admit he had a long-distance conversation with Mr. Hunt representing the Plaintiff, who explained to him the requirements of the Florida statute. Mr. Montaldo does not deny this conversation with Mr. Plunt. He merely denies that he agreed to employ Plaintiff to countersign the bond or that he agreed to pay it any remuneration therefor. However, from all the evidence, we agree with the district judge that Plaintiff was instructed to countersign the performance bond in order to validate it under the laws of Florida. However, we cannot agree with the district judge in awarding 10% ($5,342.00) of the premium ($53,-420.00) the insurance company received for signing the performance bond.
Plaintiff in its original petition alleged that it was entitled to receive “10% of the commission” not “10% of the premium.” *42 In a supplemental and amended petition, Plaintiff, in paragraph IV alleges:
“Defendants are informed and believe and therefore allege that the total premium on the bond was $53,420.00 and that said sum has been collected by defendants, hence the amount due and owing petitioner is an amount equal to ten (10%) per cent of the premium or the sum of $5,342.00.”
However, in Article VI of the same supplemental petition Plaintiff alleges:
“Alternatively and only in the event it is found that defendant, Joseph S. Montaldo, did not in fact contract to pay petitioner ten (10%) per cent of the commission collected or $5,342-00 as countersigning agent’s commission, under the customs and practices of the trade prevailing in Panama City, Florida, and throughout the State of Florida a countersigning agent is entitled to ten (10%) per cent of the total commission collected as an agent’s commission.”
Additionally there is the testimony of Mr. Hunt to the effect:
Q “Why is the counter-signature necessary?
A “Under the laws of Florida we have a counter-signature law that it says we shall collect 10% of the commission.
Q “ ‘We’ being local Florida licensed insurance agency. Is that correct?
A “That’s right. That is correct.”
Therefore we cannot agree with Defendants that there was no agreement to pay Plaintiff for countersigning, but we must hold under the allegations of the original and supplemental petitions of Plaintiff and from Mr. Hunt’s testimony, that the compensation for the countersigning in Florida is not 10% of the “premium” of $53,420.00, because that is the amount the insurer received for executing the performance bond, but only 10% of the 30% commission that Defendants received as the procuring agent.
Both parties have been inconsistent either in their pleadings or testimony. Plaintiff’s original petition alleges Defendants’ agreement was to pay 10% of the “commission” or, alternatively, that the custom prevailing in Florida is that the countersigning agent is entitled to 10% of the “commission.” However, in its supplemental petition Plaintiff claims, for the first time, the agreement was for 10% of the “premium” but, again in the alternative, 10% of the “commission.” In his testimony Mr. Hunt testified Plaintiff was to receive 10% of the “commission.” The “premium” is what the insurer charges for assuming the risk, and the “commission” is what it pays its agent for procuring the insured.
Defendants’ inconsistency is that Mr. Montaldo, in his exceptions to the jurisdiction ratione personam on the ground he resided in Jefferson and not Orleans Parish, later testified he had a residence in Orleans, but voted in Jefferson. Further, Defendants ignored Plaintiffs, repeated demands for payment of their part of the commission because their counsel advised them to do so, instead of answering the demands and denying liability. Defendant Montaldo denied he knew Mr. Hunt but admitted, under cross-examination, of a long distance telephone call he had from a business associate in Florida who introduced Mr. Hunt to him on the phone, during which Mr. Hunt explained the Florida law requiring a resident licensed insurance agent to countersign insurance contracts covering Florida risks.
Again, Defendants’ counsel insisted Plaintiff failed to produce a copy of the insurance contract proving it was countersigned by the Hunt Agency, intimating its failure to produce it would prove Defendant had not signed; yet, in open court, counsel for Defendant admitted he had a copy of the policy in his file bearing Plaintiff’s countersignature as Plaintiff had alleged and offered verbal proof.
*43 Under the circumstances, the judgment of the district court in the amount of $5,-342.00, as 10% of the “premium,” is reduced to $1,602.60, as 10% of the $16,026.-00 “commission” Defendants received as procuring agents for the insurance company.
Because Defendants have consistently maintained they owed nothing and did not claim, alternatively, either in the trial court or on appeal, that they might be liable for only 10% of the commission, not 10% of the premium, the costs in both courts are to be paid by Defendants. Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871.
Judgment of the district court is amended by reducing it to $1,602.60, with legal interest from judicial demand until paid; costs in both courts to be paid by Defendants; otherwise judgment is affirmed.
Amended and affirmed.